UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x

| | | |
|---|---|---|
| PALMETTO ADVISORS II LLC, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 1:25-cv-07578 |
| | : | |
| -against- | : | |
| | : | **COMPLAINT** |
| EQUINITI TRUST COMPANY, LLC | : | |
| f/k/a AMERICAN STOCK TRANSFER | : | |
| & TRUST COMPANY, LLC, | : | |
| | : | |
| Defendant. | : | |

----------------------------------------------------x

Plaintiff, Palmetto Advisors II LLC ("Palmetto" or "Plaintiff"), by and through its attorneys, Lax, Neville & Intelisano, LLP, brings this action against Equiniti Trust Company, LLC f/k/a American Stock Transfer & Trust Company, LLC ("AST," "Defendant," or the "Firm"), and alleges as follows:

## PRELIMINARY STATEMENT

1.      This case arises out of Plaintiff's ownership of more than 2.2 million shares of common stock in Rigetti Computing, Inc. ("Rigetti" or "RGTI").  Defendant AST served as the transfer agent for Rigetti and was solely responsible for holding Rigetti shares in book-entry form and for transferring those shares to Rigetti shareholders in accordance with the rules and regulations of the Securities and Exchange Commission ("SEC") and the conditions set forth in Rigetti's S-1 Registration Statement ("Registration Statement").

2.      In September 2023, AST advised Palmetto that 1,738,002 of its Rigetti shares were "free and clear."  AST then transferred those shares to Palmetto's brokerage account, including 833,652 Rigetti shares that remained subject to restrictions set forth in the Registration Statement and that AST was not authorized to transfer.  Relying on AST's representation and believing that

the shares subject to Rigetti's restrictions remained at AST, Palmetto instructed its brokerage firm to sell most of those shares when the average price was approximately $1.22.  The brokerage firm sold most of the shares and transferred the remaining shares at Palmetto's request so that they could benefit various charities.

3.    Twenty months later, in February 2025, RGTI met the first price threshold set forth in Rigetti's Registration Statement, which allowed the restrictions on certain shares to be lifted and such shares to be sold in the market.  However, by that time, Palmetto held no Rigetti shares. Palmetto should have been able to sell 675,528 shares in February 2025 for over $8.4 million.  In August 2025, RGTI met the second price threshold set forth in the Registration Statement, which allowed the restrictions on the remaining Rigetti shares to be lifted and such shares to be sold in the market.  At that time, Palmetto should have been able to sell its remaining 158,124 shares for $2.4 million.  As a result of AST's misrepresentations, negligence, failure to comply with the professional standards for transfer agents, and breaches of contract, Plaintiff lost more than $10.8 million.

## THE PARTIES

4.    Palmetto is a limited liability company located at 17 Woodside Road, Greenwich, CT 06830.  Plaintiff's sole member is Robert D. Reid IV 2020 GRAT #6, established under the Robert D. Reid, IV Master Grantor Retained Annuity Trust Agreement, dated May 9, 2021 (the "Trust").  Robert D. Reid, IV ("Mr. Reid") is the sole trustee of the Trust.  Mr. Reid resides at 17 Woodside Road, Greenwich, CT 06830.

5.    Equiniti Trust Company, LLC f/k/a American Stock Transfer & Trust Company, LLC is a New York limited liability trust company located at 48 Wall Street, New York, NY 10005.  Defendant initially registered as a transfer agent with the SEC in 2002 under the name

"American Stock Transfer & Trust Company, LLC." Effective as of June 30, 2023, Defendant merged with Equiniti Trust Company ("Equiniti"), with Defendant as the surviving entity. Immediately upon closing of the merger, Defendant amended its Certificate of Organization to change its name to "Equiniti Trust Company, LLC."

6.      Upon information and belief, Defendant is a citizen of New York and Delaware, and no member of Defendant is a citizen of Connecticut.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy is between citizens of different states and exceeds $75,000.

8.      This Court has supplemental subject matter jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367(a).

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in this district.

## STATEMENT OF FACTS

**A.      Rigetti Became a Publicly Traded Company Following a SPAC Transaction**

10.      Mr. Reid was the CEO of Supernova Partners LLC ("Supernova Partners"), which acts as a sponsor to special purpose acquisition companies ("SPACs").

11.      SPACs are companies created with the sole purpose of raising capital through an initial public offering ("IPO"). The SPAC places the funds raised through its IPO into a trust account. The goal of a SPAC is to identify and then acquire or merge with a private company. This structure is designed to make it easier for the target company to go public. SPACs are

sometimes referred to as "blank check companies" because the target is not known at the time of the SPAC's IPO.

12.    Supernova Partners was the sponsor of Supernova Partners Acquisition Company, II ("Supernova"), which had its IPO on March 1, 2021.  After the IPO, Supernova identified Rigetti, a pioneer of scalable quantum computing, as its merger target.  On October 6, 2021, Rigetti announced that it had entered into a definitive merger agreement with Supernova in which it would receive the $345 million held in Supernova's trust account as well as an additional $100 million raised through a private investment in public equity ("PIPE") offering.  The acquisition was completed on March 2, 2022.

      1.    **Mr. Reid Personally Invested in Rigetti and Received Additional Founder Shares**

13.    Mr. Reid personally invested in Rigetti's PIPE offering and received 136,250 shares in connection with that offering.

14.    Based on Mr. Reid's role as CEO of Supernova, Palmetto was entitled to receive 2,293,905 Rigetti Founder Shares, which was approximately 27% of the total number of Founder Shares.[1]  Ex. A.  Rigetti specified that 833,652 of those shares could only be sold if its stock price hit certain thresholds.  *Id.*

      2.    **Initially, All of Plaintiff's Shares Were Restricted Pursuant to SEC Rules and a Subset of the Shares Were Also Subject to Isser Restrictions**

15.    SPACs and other transactions involving unregistered, private sales of securities present numerous complexities because of the SEC rules and regulations that govern the sales of such securities as well as further restrictions that issuers may place on the sales of their securities.

---

[1] The other Founder Shares were held by the other three Supernova principals, individually or through their LLCs. Ex. A.  Ancient 1604 II LLC held approximately 28%, Dos Spacitos LP held 32%, and Michael Clifton held 13%.  *Id.* Each principal held some shares that were subject to issuer restrictions.  *Id.*

16.     SEC rules generally prohibit company insiders from selling shares for 90 to 180 days after an IPO.

17.     In addition, issuers, like Rigetti, may place further restrictions on the sale of their shares.  For example, an issuer may restrict a shareholder's ability to sell certain shares unless they reach a certain share price.  These restrictions are often referred to as "issuer restrictions."  Before such restrictions are met, the shares are sometimes referred to as "unvested."

18.     Certificates for restricted securities are held by a transfer agent, like AST.  Certificates for securities that are restricted are stamped with a "restrictive" legend, which indicates that the securities may not be transferred to a brokerage account or resold in the market.  Only a transfer agent can remove the restrictive legends from securities so that they can be transferred or sold by the shareholder.  The Uniform Commercial Code ("UCC"), which sets forth standards for transfer agents, permits a transfer agent to remove restrictive legends from securities only under certain circumstances, including when "the transfer does not violate any restriction on transfer imposed by the issuer."  N.Y. U.C.C. § 8-401; N.Y. U.C.C. § 8-407.

19.     Pursuant to SEC rules, Mr. Reid's PIPE shares were restricted and could not be sold until Rigetti's Registration Statement was deemed effective by the SEC.  None of the PIPE shares were subject to any additional restrictions by Rigetti:

| Number of Rigetti Shares Held by Mr. Reid | | |
|---|---|---|
| Shareholder | Number of Rigetti Shares | Issuer Restrictions |
| Mr. Reid | 136,250 | None |

20.     As set forth in a prospectus supplement to Rigetti's Registration Statement, dated August 18, 2022 (the "Prospectus Supplement"), Palmetto beneficially owned a total of 2,293,905

Rigetti shares.  Ex. A[2].  All of those shares were subject to SEC restrictions and could not be sold until after September 3, 2022.  After that date, the SEC restrictions on 1,460,253 shares expired. The remaining shares were subject to further restrictions set by Rigetti:

> (i)     675,528 Sponsor Vesting Shares ***that will only vest if***, during the five year period following the Closing, the volume weighted average price of common stock equals or exceeds $12.50 for any twenty trading days within a period of thirty consecutive trading days, and

> (ii)    158,124 Sponsor Vesting Shares ***that will only vest if***, during the five year period following the Closing, the volume weighted average price of common stock equals or exceeds $15.00 for any twenty trading days within a period of thirty consecutive trading days.

*Id.* (emphasis added).   Thus, Palmetto held 1,460,253 shares that were only subject to SEC restrictions, and 833,652 shares that were subject to SEC restrictions and issuer conditions:

| Number of Rigetti Shares Held by Palmetto | | |
|---|---|---|
| Shareholder | Number of Rigetti Shares | Issuer Restrictions |
| Palmetto | 1,460,253 | None |
| Palmetto | 675,528 | Will only vest if the stock price equals or exceeds $12.50 for any 20 trading days within a period of 30 trading days |
| Palmetto | 158,124 | Will only vest if the stock price equals or exceeds $15.00 for any 20 trading days within a period of 30 trading days |
| **Total** | 2,293,905 | |

*Id.*

---

[2] Rigetti's initial prospectus, which is part of its Registration Statement, explained that prospectus supplements issued after the Registration Statement became effective, such as the one issued on August 18, 2022, provide additional or updated information.

**B.**     **AST Served as the Transfer Agent for Rigetti**

21.     A transfer agent is a financial institution retained by a corporation to keep a record of who owns the company's stock.  Transfer agents are also responsible for issuing and cancelling stock certificates, paying dividends to stockholders, and furnishing materials to stockholders, such as annual reports.

22.     Transfer agents are required to be registered with the SEC, which promulgates rules and regulations intended to facilitate the prompt and accurate clearance and settlement of securities transactions and assure the safeguarding of securities and funds.

23.     For example, transfer agents are required to maintain accurate securityholder files. *See* 17 C.F.R. § 240.17Ad-10.  For every security that is transferred, purchased, redeemed, or issued, the transfer agent must record a variety of information, including, *inter alia*, the number of shares, the securityholder's registration, the registered securityholder's address, and any other identifying information essential to the recordkeeping system.  *See id.*; 17 C.F.R. § 240.17Ad-9(a).

24.     In addition:

> Any registered transfer agent that has custody or possession of any…securities related to its transfer agent activities shall assure that:
>
> (1)     All such securities are held in safekeeping and are handled, in light of all facts and circumstances, in a manner reasonably free from risk of theft, loss or destruction….

17 C.F.R. § 240.17Ad-12.

**1.**     **AST and Rigetti Were Parties to a Transfer Agency and Registrar Services Agreement**

25.     In March 2022, AST and Rigetti entered into the Transfer Agency and Registrar Services Agreement (the "Agreement"), pursuant to which AST served as the transfer agent for Rigetti.  Ex. B.

26.    The Agreement required Rigetti to deliver to AST "forms of outstanding stock certificates" along with other necessary documentation.  *Id.* at 1.

27.    Rigetti authorized AST "to establish a program (the '<u>DRS Sale Program</u>'), through which a holder of one or more Shares (each, a '<u>Shareholder</u>') may elect to sell any Shares held in book-entry form through the Direct Registration System."[3]  *Id.*

28.    In addition, the Agreement required AST to provide "Services" that are set forth on Schedule 1 to the Agreement, including a number of services that are provided directly to Shareholders.  *Id.* at 11-14.

29.    "Account Maintenance and Recordkeeping" services include, *inter alia*:

     a.    "Open new accounts, consolidate and close Shareholder accounts;"

     b.    "Maintain all Shareholder accounts;" and

     c.    "Handle    Shareholder    and    broker    inquiries,    including    internet correspondence."

*Id.* at 11.

30.    "Certificate and Security Issuance Functions" include:

     a.    "Process all routine transfers;"

     b.    "Mail newly-issued certificates/DRS advices to Shareholders;"

     c.    "Replace lost or Stolen Stock Certificates upon Shareholder request;" and

     d.    "Issue and register all Stock Certificates."

*Id.*

---

[3] The Direct Registration System ("DRS") enables investors to hold their assets in book-entry form rather than as traditional stock certificates.

31.    "Technology and Internet Access" services include:

    a.    "Request a certificate for shares held in book-entry or plan form"; and

      b.    "Send e-mail inquiries concerning Shareholder's account, or conduct an online chat session with one of AST's customer service representatives."

*Id.* at 12.

32.    "Shareholder (Inquiries)" services include:

    a.    "Provide assistance to Shareholders related to their securities holdings as they initiate account inquiries or perform transactions, including guidance through common transactions and explanations for transaction rejections and the corrective steps required to complete their request."

*Id.*

33.    AST agreed that it would "perform the Services in a professional and workmanlike manner in accordance with generally accepted industry standards for the industry in which the Services are being rendered." *Id.* at 3.

**C.    Mr. Reid Opened Brokerage Accounts for the Specific Purpose of Handling the Sales of his and Palmetto's Rigetti Stock**

34.    In May 2022, Palmetto and Mr. Reid opened brokerage accounts at Piper Sandler & Co. ("Piper") so that Piper could manage their Rigetti stock.  At all times, Piper acted as the agent for Palmetto and Mr. Reid in communications with AST on their behalf.

35.    On May 25, 2022, Jay Hershey ("Mr. Hershey"), a managing director at Piper, connected Mr. Reid with Feliz Orihuela ("Mr. Orihuela"), the Senior Vice President of SPAC Management at AST.  Ex. C.  Mr. Orihuela then provided Mr. Reid with an AST statement confirming that Mr. Reid personally held 136,250 Rigetti shares in book-entry form at AST.  *Id.*

**D.    Rigetti's Registration Statement Became Effective on June 2, 2022, and Mr. Reid Began Selling his PIPE Shares**

36.    On June 2, 2022, Cooley, LLP ("Cooley"), Rigetti's counsel, sent an opinion letter to AST regarding the 14.6 million Rigetti shares previously issued in the PIPE offering.  Cooley advised that "the Registration Statement has become effective under the [Securities Act of 1933]" and further instructed AST:

> …you are hereby authorized…to transfer from time to time the Shares (or any portion thereof) held by a Selling Shareholder as set forth on <u>Exhibit A</u> provided that you have received a completed and signed representation letter from the broker for such Selling Shareholder requesting that such transfer be made and certifying that (i) such Shares have been sold to a bona fide purchaser in accordance with the Registration Statement and (ii) such broker for the Selling Stockholder has delivered a current prospectus in connection with such sale.

Exhibit A to the opinion letter reflected Mr. Reid's personal ownership of 136,250 PIPE shares.

37.    Selling shares pursuant to a registration statement is a multi-step process.  In this case, Piper first had to execute a sale of Mr. Reid's PIPE shares.  Then, Piper would deliver to AST a "signed representation letter" reflecting the number of shares sold.  Upon receipt of a representation letter, AST would remove the restrictions on the shares, which permitted Mr. Reid to proceed with a DRS request to transfer the shares into his brokerage account.  After receiving the shares from AST, Piper would settle the trade and deliver the shares to the buyer.

38.    On June 2, 2022, Mr. Hershey advised Mr. Reid that Piper had "received a draft version of what is needed to clear restrictions on sold shares off the effective Registration Statement from AST."  On that same day, Piper began selling Mr. Reid's Rigetti shares and completed the sale of all 136,250 PIPE shares by August 4.

### E.    The Lock-Up Restrictions on Certain of the Rigetti Shares Held by Palmetto Ended on September 3, 2022

39.    As of September 3, 2022, the SEC lock-up restrictions were lifted on Palmetto's 1,460,253 shares that were not subject to additional issuer restrictions.  Mr. Reid learned from one of his partners in Supernova that Rigetti had taken all necessary steps to transfer the shares to AST after the end of the lock-up period.  Those shares were, in fact, transferred to AST on August 16.

40.    Latham & Watkins, LLP ("Latham"), the law firm that represented Supernova in connection with the Rigetti merger, advised Mr. Reid and the other Supernova partners that Rigetti's counsel, Cooley, would file a prospectus supplement to the Registration Statement that would allow the partners to sell their shares using the same complex process used to sell the PIPE shares, discussed *supra* ¶ 37.

41.    On August 18, 2022, Cooley filed with the SEC the Prospectus Supplement, which was publicly available on the SEC's website, that accurately reflected Palmetto's beneficial ownership of 2,293,905 shares, which included the 1,460,253 shares as well as an additional 833,652 shares that remained subject to restrictions by Rigetti that had not been satisfied.  Ex. A.

42.    AST subsequently issued a statement reflecting that Palmetto held a total of 2,293,905 shares and provided the following caution:

> A portion or all of the shares represented by this Advice are subject to either an Issuer restriction or a regulatory restriction under the Securities Act of 1933 and cannot be transferred without the approval of the Issuer or Legal Counsel for the Issuer.

Ex. D.  Thus, AST was fully aware that some of Palmetto's shares could not be transferred without the approval of Rigetti or its counsel.

43.     On August 31, 2022, Cooley emailed Mr. Reid and other Rigetti "Selling Securityholders":

> As you may be aware, the lock-up restrictions on Rigetti Computing securities issued in connection with the domestication and business combination with Supernova Partners Acquisition Company II ("Supernova") will expire at the end of the day this Friday, September 2.  Therefore, the first day that securities will be available for sale will be <u>September 6, 2022</u>.  As you were either (i) a director of Supernova at the time of the domestication of Supernova (the "Domestication") and received shares in connection with the Domestication or (ii) received securities pursuant to the distribution of securities by Supernova Partners II LLC (the "Sponsor Distribution"), any securities you received in the Domestication or Sponsor Distribution are subject to resale restrictions.  Accordingly, your securities will be held at [AST] in restricted book entry form and you will need to use an effective registration statement in order to sell your securities.  Your securities were previously registered on the Form S-1 Registration Statement that was declared effective on June 1, 2022.  ***Securities received in the Sponsor Distribution that are subject to vesting will not be available for sale.***

Ex. E (emphasis added).

44.     On September 2, 2022, Cooley sent a second opinion letter to AST (the "September Cooley Letter" or the "Letter").  The September Cooley Letter referenced Rigetti's Registration Statement as well as 6,602,899 shares of the company's common stock and 4,450,000 warrants, which are defined in the letter as the "Securities."  Ex. F.  All of the Securities were "eligible for legend removal pursuant to the conditions outlined below for the selling securityholders listed on <u>Exhibit A</u> attached hereto."  *Id.*  Cooley further instructed AST:

> …you are hereby ***authorized…to transfer from time to time the Securities (or any portion thereof) held by a Selling Securityholder as set forth on <u>Exhibit A</u>*** provided that you have received a completed and signed representation letter from the broker for such Selling Shareholder requesting that such transfer be made and certifying that (i) such Securities have been sold to a bona fide purchaser in accordance with the Registration Statement and (ii) such broker for the Selling Securityholder has delivered a current prospectus in connection with such sale.

12

*Id.* (emphasis added). Exhibit A to the Letter reflected Palmetto's ownership of 1,460,253 shares. *Id.* The 1,460,253 shares were the **total** number of shares held by Palmetto that were not subject to issuer restrictions. The September Cooley Letter and its Exhibit A do not refer in any way to Palmetto's shares that remained subject to issuer restrictions until RGTI hit certain price targets. Thus, AST was not authorized – by either Rigetti or Cooley – to transfer any of the 833,652 that remained subject to such restrictions.

45.     Between September and October 2022, Piper sold 555,903 of Palmetto's Rigetti shares, using the same process Piper had used to sell Mr. Reid's PIPE shares:

| Rigetti Shares Sold by Piper While Shares Remained at AST | | |
|---|---|---|
| **Trade Date** | **Quantity** | **Remaining Shares Not Subject to Issuer Restrictions** |
|  |  | 1,460,253 |
| 9/6/2022 | 5,903 | 1,454,350 |
| 9/7/2022 | 84,367 | 1,369,983 |
| 9/8/2022 | 265,633 | 1,104,350 |
| 9/9/2022 | 100,000 | 1,004,350 |
| 10/26/2022 | 100,000 | 904,350 |
| **Total** | 555,903 |  |

46.     Upon information and belief, AST knew the precise number of shares sold by Palmetto because Piper provided the Firm with a signed representation letter concerning each sale, and only upon receipt of such letter did AST transfer the shares to Palmetto's account at Piper.

### F.     One Year After the Registration Statement Became Effective, Palmetto's Remaining Shares that Were Not Subject to any Issuer Restrictions Could Be Transferred to its Brokerage Account

47.     One year after the Registration Statement became effective, the remaining shares that Palmetto held that were not subject to issuer restrictions could be transferred to its brokerage account and sold more efficiently by Piper. However, any shares that remained subject to issuer restrictions could not be transferred.

48.     On June 5, 2023, Alex Johnson ("Mr. Johnson"), another Piper employee, spoke to AST on Mr. Reid's behalf.  Ex. G.  Mr. Johnson subsequently reported to Mr. Reid that AST confirmed that Cooley had issued a "blanket opinion" letter and that his "common RGTI shares will be unrestricted in the next few business days."  *Id.*  Upon information and belief, AST's reference to the blanket opinion letter was to the September Cooley Letter from the year prior that reflected Palmetto's holding of a ***total*** of 1,460,253 that AST had been authorized to transfer to Palmetto.

49.     Mr. Johnson then advised Mr. Reid that AST had requested certain documentation "in order to fully remove the [restrictive] legends on the RGTI shares held there."  Ex. H.  Based on the information Mr. Johnson received from AST, he instructed Mr. Reid to sign a "Legend Removal Letter" and email it to AST.  *Id.*  Mr. Johnson sent Mr. Reid an unsigned legend removal letter that had been drafted by Piper, which stated:

> I am writing to instruct you to remove the restricted legends on 1,738,002 shares of Rigetti Computing, Inc (RGTI) held by Palmetto Advisors II LLC in AST account number [x0452] in conjunction with the blanket legal opinion on file.
> ….
> Upon restricted legend removal we wish to have the shares transferred via DRS to our brokerage account at Piper Sandler & Co. (DTC – 0443, Pershing LLC).

*Id.*  Mr. Johnson also provided specific language for Mr. Reid's cover email to AST:

> Attached you will find a legend removal letter for 1,738,002 shares of Rigetti Computing, Inc held by Palmetto Advisors II LLC in AST Account Number [x0452].  We understand that there is a blanket opinion on file to have the restricted legends removed upon our request.
>
> I, Robert Reid, as an authorized member of Palmetto Advisors II LLC, wish to have the restricted legends removed on my shares such

> that we may transfer them to our brokerage account via DRS
> transfer.

*Id.*

50.     Mr. Reid made no changes to the legend removal letter drafted by Piper.  He simply printed it, signed it and emailed it to AST, using the exact language in the body of his email that Piper drafted for him.  Ex. I.

51.     At the time, Mr. Reid was not cognizant of the specific number of Rigetti shares held by Palmetto.  Rather, he understood that he initially held approximately 27% of the Rigetti Founder Shares, while his other partners held the remaining 73%.

### G.     Despite Obvious Confusion Among AST Staff, the Firm Removed the Restrictive Legends from All the Rigetti Shares Held by Palmetto

52.     On June 21, 2023, Mr. Johnson emailed AST, copying Mr. Reid on the email.  Ex. J.  He asked about the status of the legend removal request and noted that Mr. Reid had not received a "confirmation or email response."  *Id.*  Marie Cecile Cezaire ("Ms. Cezaire"), a Restricted Processing Specialist at Equiniti, asked Mr. Johnson for a copy of the documents that Mr. Reid had previously sent.  *Id.*  Mr. Johnson re-sent her the documents and asked whether AST needed anything else in order to process the legend removal request.  *Id.*  Ms. Cezaire asked Mr. Johnson for a copy of the "opinion."  *Id.*  Mr. Johnson responded to Ms. Cezaire and copied Mr. Reid:

> We do not have a copy of the opinion.  Equiniti/AST confirmed they
> had the blanket opinion on file – do you need me to reach out to our
> contacts at RGTI for a copy of the opinion or is this something you
> can obtain directly with them?

*Id.*

53.     Mr. Johnson followed up with Ms. Cezaire on June 23 and advised, "[w]e were told by reps at Equiniti that the blanket opinion was on file."  *Id.*  A different Equiniti employee, Sonia Wyllie ("Ms. Wyllie"), responded to Mr. Reid and Mr. Johnson, "[w]e do not have a current

blanket opinion on file and you would need to contact the Company or their counsel." *Id.* She also apologized for the "incorrect information" previously provided, presumably referring to the representation that AST had the blanket opinion on file. *Id.*

54.     Upon information and belief, there were no further written communications between Mr. Reid or Mr. Johnson, on the one hand, and any AST employee, on the other hand, until the morning of June 26 when Ms. Cezaire replied to Ms. Wyllie's email, advising both Mr. Reid and Mr. Johnson that: "The shares are now ***free and clear***." *Id.* (emphasis added).

55.     Mr. Johnson thanked Ms. Cezaire and advised that Piper would submit a DRS request to have the shares transferred to Palmetto's account at Piper. *Id.*

**H.     The Shares Were Not "Free and Clear," and AST Should Not Have Transferred Them to Palmetto's Account at Piper**

56.     As Rigetti's transfer agent, AST was the only entity that had the ability to remove the restrictive legends on Palmetto's shares and transfer them to Palmetto's account.

57.     On June 27, 2023, AST transferred 1,738,002 RGTI shares into Palmetto's account at Piper.

58.     All of those shares, however, were not "free and clear." The September Cooley Letter specified that Palmetto owned 1,460,253 Rigetti shares and authorized AST to transfer ***only*** those shares. Ex. F. That was the ***total*** number of shares held by Palmetto on September 2, 2022 that were not subject to any issuer restrictions.

59.     Based solely upon the September Cooley Letter, AST was not authorized to transfer to Palmetto's brokerage account any of the Rigetti shares that remained subject to issuer

restrictions.  Thus, AST transferred to Palmetto 277,749 RGTI shares that neither Rigetti nor its counsel had authorized AST to transfer.[4]

60.     On top of that mistake, AST was, or should have been, aware that the Firm had already transferred 555,903 of Palmetto's shares to Piper when they were sold between September and October 2022 pursuant to the Registration Statement.  As discussed above, AST was not permitted to transfer such shares without receiving a representation letter from Piper for each sale.  Accordingly, there were only 904,350 shares that could have been properly transferred in June 2023.[5]

61.     Neither Rigetti nor Cooley authorized AST to transfer to Palmetto any of the shares that were still subject to issuer restrictions.  AST ignored the September Cooley Letter and wrongfully transferred 833,652 shares subject to such restrictions into Palmetto's account.

62.     Transfer agents, like AST, are professional organizations that are responsible for ensuring the security and reliability of the securities markets through the management of restricted securities that cannot be sold in the market.  Transfer agents have the ability to remove restrictive legends on securities only when such removal has been authorized by the issuer.  Nothing permits a transfer agent to remove restrictive legends based solely on an email or letter from a shareholder.

63.     AST's unauthorized transfer of Rigetti shares that were subject to issuer restrictions and its false representation to Mr. Reid that the shares were "free and clear" likely resulted either from its failure to review the September Cooley Letter in September 2023 or its failure to comply

---

[4] The total number of shares transferred to Piper in June 2023 (1,738,002) *minus* the total number of shares AST was permitted to transfer pursuant to the September Cooley Letter (1,460,253) *equals* 277,749 shares that AST was not authorized to transfer.

[5] The total number of shares AST was permitted to transfer pursuant to the September Cooley Letter (1,460,253) *minus* the number of shares that AST had already transferred to Piper (555,903) *equals* 904,350 shares that AST was authorized to transfer and that were actually "free and clear."

with the authorization provided in that Letter.[6]  Had AST followed the authorization in the Letter, the Firm would not have transferred shares to Palmetto's Piper account that remained subject to issuer restrictions, and those shares would not have been sold.

64.     Upon information and belief, AST properly handled the transfer of shares for other Rigetti shareholders.  Mr. Reid's partners in Supernova also received shares in connection with the SPAC transaction that were subject to Rigetti restrictions.  Ex. A.  All of those shares were also held by AST, as Rigetti's transfer agent.  However, upon information and belief, AST did not transfer any shares to the brokerage accounts of the other Supernova partners that remained subject to issuer restrictions.

## I.     Based on AST's False Representation That the Shares Were "Free and Clear," Robert Made the Decision to Sell or Transfer All of Those Shares

65.     On June 27, 2023, AST transferred 1,738,002 RGTI shares into Palmetto's account at Piper, which were valued at $1,877,042.  Mr. Reid believed Palmetto's shares that remained subject to issuer restrictions were still being held in safekeeping by AST.  He believed that he would be able to sell those shares if and when Rigetti's share price hit the applicable price targets and the issuer restrictions were lifted.

---

[6] AST did not and could not rely solely on Palmetto's legend removal letter.  The Agreement provides:

> AST may rely on, and shall be protected and incur no liability in acting or refraining from acting in reliance upon:  (i) any writing or other instruction believed by AST in good faith to have been furnished by or on behalf of a Shareholder [and] (ii) any statement of fact contained in any such writing or instruction that AST **in good faith believes** to be accurate.

Ex. B at 3 (emphasis added).  It is clear that AST did not rely solely on Palmetto's legend removal letter and sought to verify the statements of fact in that letter using the September Cooley Letter.  Whether AST failed to review that Letter in September 2023 or ignored the parameters of the authorization provided by the Letter, AST could not have believed "in good faith" that Palmetto could transfer 833,652 shares that remained subject to Rigetti restrictions to its brokerage account.

66.     In reliance upon AST's misrepresentation, Mr. Reid sold 923,307 Rigetti shares between September 14, 2023 and January 30, 2024, at an average price of $1.22, not even close to the $12.50 or $15.00 thresholds.

67.     At Palmetto's request, Piper also transferred the 814,695 shares remaining in Palmetto's account out of Piper (approximately 53 percent of the shares AST transferred to Palmetto in June 2023).  Palmetto donated 200,000 of the transferred shares to the University of North Carolina at Chapel Hill and the remaining 614,695 to the Robert Reid Family Foundation, a donor-advised fund ("DAF") that supports multiple charitable causes.  As of June 11, 2024, no Rigetti shares remained in Palmetto's account at Piper.  Following those transfers, Mr. Reid no longer controlled those shares.  Upon information and belief, all of the Rigetti shares that Palmetto transferred out of its Piper account were sold.[7]

### J.     Palmetto Only Discovered AST's Mistakes When Rigetti's Stock Price Hit $12.50 for 20 Days in February 2025

68.     On February 6, 2025, Rigetti shares reached the $12.50 price threshold set forth in the Prospectus Supplement to the Registration Statement for 20 out of the previous 30 days.  Rigetti advised AST that the restrictive legends on that first tranche of shares could be removed.  Mr. Johnson asked Rigetti for a statement from AST reflecting Palmetto's holdings so that Piper could begin preparing the necessary paperwork to have the shares transferred to Palmetto's account at Piper.  Neither Rigetti nor AST could find any record of any shares still held in Palmetto's name.

69.     By the following day, it became clear that AST did not have custody of any Rigetti shares held in Palmetto's name.  Mr. Reid was shocked.  He asked Piper for an explanation, and Mr. Hershey responded:

---

[7] In general, shares of stock are fungible.  Once AST wrongfully removed the restrictive legends on all the shares and transferred them to Piper, the shares were indistinguishable.

> Good morning Robert.  It seems to us that **the Transfer Agent released your shares early** and you sold/gifted the shares.  We don't know about the Transfer Agent's decision to release shares if they were subject to the $12.50 earnout early.  **The latter is 100% on the Transfer Agent if that was the case.**

Ex. K (emphases added).[8]

70.     Upon information and belief, when RGTI met the first price threshold in February 2025, some of Mr. Reid's Supernova partners were able to sell their Rigetti shares for many millions of dollars.  Through Palmetto, Mr. Reid was the only one of the Supernova partners who was a victim of AST's misrepresentations, negligence, and breaches of the Agreement.

### K.     AST's Wrongdoing Resulted in More than $10.8 Million in Losses

71.     As Rigetti's transfer agent, AST was responsible for maintaining a record of the owners of the company's stock and for ensuring that the stock was "held in safekeeping."  In addition, the UCC permits a transfer agent to remove restrictive legends from securities and transfer them to a shareholder only under certain circumstances, including when "the transfer does not violate any restriction on transfer imposed by the issuer" and "the transfer is in fact rightful." N.Y. U.C.C. § 8-401; N.Y. U.C.C. § 8-407.  AST failed to fulfill those responsibilities.  Mr. Reid relied on AST's representation that the shares were "free and clear" and acted reasonably based upon that representation to sell and  transfer all of the shares that AST transferred to Palmetto's account at Piper.  By improperly removing the restrictive legends on 833,652 shares and transferring them, AST breached its duties as a transfer agent by transferring shares that remained subject to issuer restrictions.

---

[8] Due to Piper's wrongdoing, Palmetto commenced an arbitration at FINRA Dispute Resolution Inc. ("FINRA") against Piper on June 17, 2025.  Palmetto is required to resolve its dispute with Piper at FINRA pursuant to a mandatory arbitration clause in its customer agreement with Piper.

72.     If AST had not misrepresented that all 1,738,002 shares were "free and clear" and transferred those shares to Piper, Palmetto would have been able to sell 833,652 shares when RGTI hit the thresholds set forth in the Prospectus Supplement.

73.     First, 675,528 Rigetti shares would have remained in Palmetto's account at AST on February 7, 2025, when Rigetti's stock price was $12.50 or more for 20 out of the previous 30 trading days and the issuer restriction on those shares was lifted.  Those shares would have been transferred into Palmetto's Piper account on or about that date, permitting Palmetto to sell the shares.  Given the trading volume in February 2025, Palmetto would have been able to sell all 675,528 shares on or about February 7 at or close to the $12.50 price.  Such sales would have generated over $8.4 million.

74.     Second, the final tranche of 158,124 shares would have remained in Palmetto's account at AST in August 2025 when Rigetti's stock price was $15.00 or more for 20 out of the previous 30 trading days.  Palmetto would have been able to sell all 158,124 shares at or close to the $15.00 price.  Such sales would have generated over $2.4 million.

75.     Instead, by relying on AST's false representation that the shares were "free and clear," Mr. Reid had already sold most of those shares for $1,202,751.

## CLAIMS FOR RELIEF

### AS AND FOR A FIRST CAUSE OF ACTION
(Gross Negligence)

76.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

77.     AST owed a duty to Plaintiff.  First, AST and Plaintiff had a special or privity-like relationship.  AST communicated directly with Mr. Reid, Plaintiff's manager, concerning his request to remove the restrictive legends on 1,738,002 shares of Rigetti stock.  Second, as a transfer

agent, AST had the same obligation to shareholders in the registration of a transfer of securities as Rigetti. N.Y. U.C.C. § 8-407. AST had an obligation to remove restrictive legends from securities and transfer them to a shareholder only under certain circumstances, including when "the transfer does not violate any restriction on transfer imposed by the issuer" and "the transfer is in fact rightful." N.Y. U.C.C. § 8-401; N.Y. U.C.C. § 8-407. Third, AST's actions were not simple nonfeasance, but rather misfeasance. In performing its duties to Rigetti, its principal, AST, acted in such a manner as to infringe on the rights and privileges of Palmetto. Such misfeasance gives Palmetto standing to assert this claim against AST.

78.    AST breached its duty to Palmetto by misrepresenting that its shares were "free and clear" and by removing the restrictive legends on 833,652 shares of Rigetti stock that remained subject to issuer restrictions, and such legend removal was not rightful.

79.    AST further breached its duty to Plaintiff by transferring those shares – without the required restrictive legends – to Palmetto's account at Piper, which enabled Palmetto to sell and transfer shares that were subject to issuer restrictions.

80.    AST's misrepresentations to Plaintiff and unauthorized transfer of shares that were subject to an issuer restriction constituted a reckless disregard for the rights of Palmetto. As Rigetti's transfer agent, AST was the only entity that could remove the restricted legends from Palmetto's shares and transfer them to Palmetto's brokerage account. AST recklessly failed to comply with the September Cooley Letter and its own records that reflected the actual number of shares that could be transferred to Palmetto's Piper account. This conduct was more egregious than a mere failure to exercise ordinary care and "smacks" of intentional wrongdoing.

81.    As a direct and proximate result of AST's negligence, Plaintiff has sustained injuries of at least $10.8 million.

## AS AND FOR A SECOND CAUSE OF ACTION
(Negligence)

82.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

83.     As discussed *supra* ¶ 77, AST owed Plaintiff a duty of care.

84.     AST breached its duty to Palmetto by misrepresenting that its shares were "free and clear" and by removing the restrictive legends on 833,652 shares of Rigetti stock that remained subject to issuer restrictions, and such legend removal was not rightful.

85.     AST further breached its duty to Plaintiff by transferring those shares – without the required restrictive legends – to Palmetto's account at Piper, which enabled Palmetto to freely sell and transfer shares that were subject to Rigetti restrictions.

86.     As a direct and proximate result of AST's negligence, Plaintiff has sustained injuries of at least $10.8 million.

## AS AND FOR A THIRD CAUSE OF ACTION
(Negligent Misrepresentation)

87.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

88.     As discussed *supra* ¶ 77, AST owed Plaintiff a duty of care, including the duty to provide correct information to Palmetto about the removal of the restrictive legends.

89.     After receiving Palmetto's legend removal letter, AST initially made clear that the Firm would not transfer the securities without a Cooley opinion letter on file.  Five days later, AST then represented to Palmetto that all 1,738,001 shares were "free and clear."  This statement was false.  833,652 shares were not "free and clear" and remained subject to issuer restrictions set forth in the Prospectus Supplement.  None of those shares could be rightfully transferred to Palmetto's

account at Piper. AST either knew that its statement was false or should have known that the statement was false based on the September Cooley Letter and on its own securityholder records that the Firm was required to maintain pursuant to SEC regulations.

90.    AST understood that Palmetto would rely on its misrepresentation and transfer the shares to Palmetto's Piper account, making it possible for Palmetto to freely sell or transfer those shares.

91.    Palmetto relied on AST's misrepresentation and its agent facilitated the transfer of the shares from AST to Palmetto's account at Piper based on AST's false representation. Palmetto further relied on AST's representation that the shares were "free and clear" when selling and transferring the shares.

92.    As a direct and proximate result of AST's negligent misrepresentation, Plaintiff has sustained injuries of at least $10.8 million.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Professional Negligence)

93.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

94.    As discussed *supra* ¶ 77, AST owed Plaintiff a duty of care.

95.    AST failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a transfer agent. The standard for such skill and knowledge is outlined in the UCC, which provides, *inter alia*, that transfer agents are obligated to remove restrictive legends from securities and transfer them to the shareholder only when "the transfer does not violate any restriction on transfer imposed by the issuer" and "the transfer is in fact rightful." N.Y. U.C.C. § 8-401; N.Y. U.C.C. § 8-407. AST either failed to review the September Cooley Letter or failed to

comply with the directives in the September Cooley Letter.  In either case, AST failed to act with the ordinary reasonable skill and knowledge commonly possessed by a transfer agent.

96.     AST also failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a transfer agent by failing to either maintain or consult its securityholder files, as required by 17 C.F.R. § 240.17Ad-10, before transferring shares to Palmetto's account at Piper that remained subject to restrictions by Rigetti.

97.     AST also failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a transfer agent by transferring Rigetti shares that remained subject to issuer restrictions to Palmetto's account and thereby failing to hold the Rigetti securities in safekeeping as required by 17 C.F.R. § 240.17Ad-12.

98.     As a direct result of AST's failure to act with ordinary reasonable skill and knowledge commonly possessed by a transfer agent, AST removed the restrictive legends on, and then transferred to Palmetto's account at Piper, 833,652 shares of Rigetti stock that remained subject to issuer restrictions.  Such legend removal was not rightful.  AST's removal of the restrictive legends and the transfer of the shares made it possible for those shares to be sold or transferred.

99.     As a direct and proximate result of AST's negligence, Plaintiff has sustained injuries of at least $10.8 million.

<u>**AS AND FOR A FIFTH CAUSE OF ACTION**</u>
(Breach of Contract)

100.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

101.    The Agreement is a valid and binding contract between AST and Rigetti, which establishes AST's contractual duties to Rigetti as well as to Rigetti's shareholders.  As discussed

*supra* ¶¶ 28-32, the Agreement required AST to provide a number of services directly to Rigetti's shareholders.

102.    As a Rigetti shareholder, Palmetto was an express, intended third-party beneficiary of the Agreement and is therefore entitled to enforce the Agreement's terms against AST.

103.    Plaintiff has performed any obligations it had pursuant to the Agreement.

104.    AST breached the Agreement by failing to:  (i) "[h]andle Shareholder and broker inquiries"; (ii) "[p]rovide assistance to Shareholders related to their securities holdings"; and (iii) "[p]rovide guidance through common transactions" in a "professional manner in accordance with generally accepted industry standards" when it advised Palmetto and Piper that 1,738,002 shares were "free and clear."

105.    AST also breached the Agreement by failing to "[p]rocess…routine transfers" in a "professional manner in accordance with generally accepted industry standards" when it transferred 833,652 shared to Palmetto's account at Piper that remained subject to issuer restrictions.    AST's transfer of shares that remained subject to issuer restrictions was unprofessional and contrary to industry standards, which require that a transfer must be registered only if it "does not violate any restriction on transfer imposed by the issuer" and "is in fact rightful."  N.Y. U.C.C. § 8-401; N.Y. U.C.C. § 8-407.

106.    AST's breaches of the Agreement reflect a reckless disregard for the rights of Palmetto.  As Rigetti's transfer agent, AST was the only entity that could remove the restrictive legends from Palmetto's shares and transfer them to Palmetto's brokerage account.    AST recklessly failed to comply with the September Cooley Letter as well as New York law governing transfer agents.  The Firm's breaches of the Agreement were grossly negligent.

107.    AST is liable to Plaintiff, as a third-party beneficiary, for the losses it suffered as a direct result of AST's failure to perform its contractual obligations pursuant to the Agreement.

108.    As a direct and proximate result of AST's breaches of the Agreement, Plaintiff has sustained injuries of at least $10.8 million.

<b>PRAYER FOR RELIEF</b>

**WHEREFORE,** Plaintiff respectfully prays for damages against Defendant as follows:

(1)    For Plaintiff's compensatory damages in an amount that the jury deems just and proper under the circumstances;

(2)    For Plaintiff's costs and disbursements herein, including attorneys' fees;

(3)    For pre- and post-judgment interest; and

(4)    For such other and further relief as the Court determines to be just and proper.

<b>JURY TRIAL DEMANDED</b>

Plaintiff hereby demands a trial by jury on all issues triable by jury.

Dated: New York, New York
September 10, 2025

Respectfully submitted,

LAX, NEVILLE & INTELISANO, LLP
Attorneys for Plaintiff

By

Ross B. Intelisano
Jessica A. Murzyn
Empire State Building
350 Fifth Avenue, Suite 4640
New York, NY 10118
212.696.1999